IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KATHERINE L. ANDERSON,

        Plaintiff,

    vs.                            Civil Action 2:14-cv-1222
                                            Judge Graham
                                            Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

<u>REPORT AND RECOMMENDATION</u>

I.    **Background**

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the Court for consideration of *Plaintiff's Statement of Errors* ("*Statement of Errors*"), Doc. No. 7, and the *Defendant's Memorandum in Opposition*, Doc. No. 12.

    Plaintiff Katherine L. Anderson filed her applications for benefits on February 25, 2010, alleging that she has been disabled since February 8, 2010. *PAGEID* 38, 164-79. The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    An administrative hearing was held on October 29, 2012, at which plaintiff, represented by counsel, appeared and testified, as did Mary Beth Kopar, who testified as a vocational expert. *PAGEID* 59. In a

decision dated January 25, 2013, the administrative law judge concluded that plaintiff was not disabled from February 8, 2010, through the date of the administrative decision. *PAGEID* 38-50. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 28, 2014. *PAGEID* 19-20.

Plaintiff was 43 years of age on the date of the administrative decision. *See PAGEID* 50, 164. She has at least a high school education, is able to communicate in English, and has past relevant work as a nurse's aide, grocery worker, case aide, check cashing cashier, food sales clerk, and stock clerk. *PAGEID* 48-49. Plaintiff is insured for disability insurance purposes through September 30, 2015. *PAGEID* 40. She has not engaged in substantial gainful activity since February 8, 2010, her alleged date of onset of disability. *Id*.

## II. Administrative Hearing

Plaintiff testified at the administrative hearing that she left her last job as a nurse's aide after a motor vehicle accident on February 8, 2010, *PAGEID* 70, 76, in which she suffered injuries to her right leg, left hip, and pelvis. *PAGEID* 76. Plaintiff was bedridden after the accident; she completed three months of physical therapy in her home and 12 weeks of outpatient physical therapy until "insurance ran out." *PAGEID* 82-83. She continues to take pain medication approximately every four hours; she rates her pain as eight or eight and a half on a 10-point scale. *PAGEID* 83-84. Her pain is continuous and increases with walking. *PAGEID* 85.

2

Plaintiff experiences pain in her lower back after walking a couple of minutes.  *PAGEID* 77.  She uses a cane to help her stand and walk.  *PAGEID* 78.  She uses a wheelchair if she must be out for more than thirty minutes.  *Id.*  Plaintiff can walk for five to 10 minutes and can stand for five minutes before she must sit.  *PAGEID* 80.  In an eight-hour day, she can be on her feet "[m]aybe an hour, hour and a half."  *PAGEID* 86-87.  She has no problem with sitting, but has difficulty getting up.  *PAGEID* 80.  She can sit for 10 minutes before needing to put a towel or pillow under her hip.  *Id.*  She has difficulty with steps.  *PAGEID* 81.  Plaintiff also testified that she can lift 10 or 15 pounds.  *PAGEID* 87.

On a typical day, plaintiff "watch[es] a lot of TV," "read[s] a lot," and does the dishes "a little bit at a time."  *PAGEID* 81.  Her husband does most of the housework; plaintiff can "run the sweeper around [her] bed," but it takes her 30 minutes because she must take many breaks.  *PAGEID* 81-82, 89.  Plaintiff does not "really have energy" during the day because her sleep is disrupted.  *PAGEID* 87.  She takes three naps a day, each for an hour to an hour and a half.  *PAGEID* 88.  Plaintiff elevates her legs frequently, for a total of four and a half to five hours during an eight-hour workday.  *PAGEID* 88.

Plaintiff attends her daughter's plays at school, but fidgets while she sits.  *PAGEID* 89.  On weekends, she sits on the porch to watch her grandchildren in the yard. She uses a computer for social media, games, and research for her daughter's school work.  *PAGEID* 81-

82.  Plaintiff can drive short distances, but she tries to avoid the highway because she experiences panic attacks, which last from three to seven minutes. *PAGEID* 68, 79.

Plaintiff testified that she has really bad days more than 50 percent of the time. On her bad days, she does not want to see anybody because she alternates between crying and sleeping.  *PAGEID* 90.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge.  *PAGEID* 102-06.  According to the vocational expert, such an individual could not perform plaintiff's past relevant work as a nurse's aide, grocery worker, case aide, check cashing cashier, food salesclerk, or stock clerk, but could perform such jobs as order clerk, addresser, and surveillance systems monitor.  *PAGEID* 94-97.

## III.  **Evidence of Record**[1]

Plaintiff presented to the emergency room on February 9, 2010, following a motor vehicle accident.  *PAGEID* 276.  Plaintiff was diagnosed with a comminuted right proximal tibial plateau fracture, left acetabular fracture, and left third rib fracture.  Plaintiff underwent an open reduction and internal fixation of her left acetabular fracture and placement of an external fixator through her pelvis.  On February 11, 2010, plaintiff underwent an open reduction and internal fixation of her tibial plateau fracture, repair of the

---

[1]  The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors*, which challenges the administrative law judge's evaluation of plaintiff's physical impairments.

4

right medial meniscus tear, and bone graft of a bony defect and removal of external fixator and application of a VAC dressing.  *Id.* Plaintiff required a three-day stay in the intensive care unit due to a desaturation episode at the end of her operating room course.  *Id.* Plaintiff's pain was controlled with oral medication. She progressed in physical therapy, but was instructed to be nonweightbearing on both lower extremities.  *PAGEID* 277.  Plaintiff was diagnosed with polytrauma and discharged on February 23, 2010, in stable condition. *Id.*  Plaintiff was told to follow up with her surgeon, Ivan Tarkin, M.D.  *PAGEID* 279.

Plaintiff underwent physical therapy in her home from February 25 through April 29, 2010,  *PAGEID* 385-99, and continued outpatient physical therapy through 2010. At the time of her discharge, she met all of her therapy goals.  *PAGEID* 540.

Plaintiff's surgeon, Ivan Tarkin, M.D., saw plaintiff in follow-up on March 10, 2010.  *PAGEID* 551.  Plaintiff reported minimal pain. *Id.*  Dr. Tarkin noted that plaintiff's surgical incisions had healed without consequence, her left hip had supple motion, and her right knee had significant stiffness.  *Id.*  Distal neurocirculatory exams were within normal limits.  *Id.*  X-rays showed "optimal reduction, stable hardware of both her left acetabular fracture as well as right bicondylar tibial plateau fracture."  *Id.*  *See also PAGEID* 404 (X-rays of plaintiff's left hip revealed no evidence of complication and no change in alignment following internal fixation of posterior column and posterior rim acetabular fractures), 405 (X-rays of plaintiff's

5

right knee revealed no evidence of complication and no change in
alignment following internal fixation of comminuted proximal tibial
and lateral tibial plateau fractures).  Dr. Tarkin noted "the natural
history of [plaintiff's] devastating injuries . . . would be
stiffness, pain, and the evolution of post-traumatic arthrosis."
*PAGEID* 551.  On April 21, 2010, range of motion of plaintiff's knee
was 0-110 degrees, which was described as "fantastic."  *PAGEID* 549.
Her knee was stable in the coronal and sagittal planes and a distal
neurocirculatory exam was within normal limits.  *Id*.  Plaintiff's left
hip had supple motion.  *Id*.  X-rays showed "anatomic reconstruction of
her acetabular fracture with stable hardware with similar findings for
the tibial plateau, although this was a smash injury."  *Id*.  *See also*
*PAGEID* 402 (X-rays revealed progressive healing of proximal tibial
fracture in near anatomic alignment).  On May 19, 2010, the range of
motion of the right knee was 10-95 degrees; the her knee was
ligamentously stable.  *PAGEID* 547.  Plaintiff had supple range of
motion in her left hip and a distal neurocirculatory exam was within
normal limits bilaterally.  *Id*.  X-rays showed "anatomic reduction and
advanced healing left acetabular fracture.  On the right knee there is
healing noted as well as stable hardware."  *Id*.  *See also PAGEID* 400
(X-rays from May 19, 2010 revealed posterior column fracture of the
left hip and anatomic reduction of tibial plateau).  Dr. Tarkin
continued plaintiff's physical therapy and started a gait training
protocol.  *PAGEID* 547.

6

Plaintiff was again evaluated by Dr. Tarkin on September 22, 2010. *PAGIED* 544. Plaintiff's incisions were well-healed and she had pain-free range of motion of the hip. *Id*. Plaintiff had regained range of motion in her knee at 0-100 degrees, but she still experienced joint line tenderness with palpation. *Id*. "X-rays showed that her acetabular, as well as the proximal tibia fractures, have healed. She does have significant posttraumatic changes about her knee, especially the lateral compartment." *Id*. *See also PAGEID* 541 (X-rays of plaintiff's right knee revealed healing comminuted intra-articular fracture involving the right medial and lateral tibial plateau and proximal tibial diametaphysis post internal fixation), 542 (X-rays of her pelvis revealed healing near anatomically aligned left acetabular posterior column/rim fracture post internal fixation with no hardware complications). Dr. Tarkin recommended Tylenol and NSAIDs and commented that, "if she has knee pain refractory to this, we can move onto injections, and eventually, she will be a candidate for joint arthroplasty, although I described to her that she is young for this option." *PAGEID* 544.

Plaintiff was consultatively evaluated by Maheshwar R. Musunuri, M.D., on November 10, 2010. *PAGEID* 410-19. Plaintiff reported constant, radiating, and sharp pain in her right leg and left hip. *PAGEID* 411-12. Plaintiff also reported depression and occasional panic attacks, although her depression was controlled with medication. *PAGEID* 412. Plaintiff also reported that she could stand and walk for two hours in an eight-hour workday, and could sit for a total of two

hours, one hour at a time. She could lift and carry 10 to 15 pounds for two-thirds of the workday. *PAGEID* 414. Examination revealed mild swelling of the right knee joint, no restriction in range of motion at the right knee joint, no muscular atrophy, and pedal pulses of 2+ bilaterally. *PAGEID* 413. Plaintiff had mild to moderate restriction in the range of motion in abduction and external rotation of the left hip joint. *PAGEID* 414, 416-19. Dr. Musunuri opined that plaintiff's "impairment in work-related physical activities is moderate to severe." *PAGEID* 415.

Medical consultant "W. Backlund" reviewed the record and completed a physical residual functional capacity assessment on January 11, 2011. *PAGEID* 424-31. The medical consultant opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk at least two hours in an eight-hour workday, and could sit for about six hours in an eight-hour workday. *PAGEID* 425. Plaintiff could frequently balance and could occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. *PAGEID* 426. The medical consultant further opined that plaintiff would need to avoid concentrated exposure to vibration and hazards such as machinery and heights. *PAGEID* 428.

Dr. Musunuri again evaluated plaintiff on July 6, 2011. *PAGEID* 501-10. Plaintiff's reports to Dr. Musunuri and Dr. Musunuri's assessment were nearly identical to his November 10, 2011 assessment, except that plaintiff reported that both her depression and her

anxiety were controlled with medication. *Id*. Dr. Musunuri again opined that plaintiff's "impairment in work related physical activities is moderate to severe." *PAGEID* 506.

Elizabeth Das, M.D., reviewed the record and, on July 19, 2011, affirmed the medical consultant's January 11, 2011 RFC assessment. *PAGEID* 511.

Plaintiff treated with Charles Bradac, Jr., M.D., from May 11, 2001, through at least November 30, 2012. *PAGEID* 439, 530, 574, 581-91. On September 23, 2010, plaintiff reported that she had undergone physical therapy and would like to continue to do so. *PAGEID* 454. On January 27, 2011, plaintiff sought a refill of her prescriptions; there was no edema in her extremities. *PAGEID* 457. Plaintiff presented to Dr. Bradac on April 28, 2011, requesting an electric wheelchair, which Dr. Bradac prescribed. *PAGEID* 513. On May 26, 2011, plaintiff requested an increased dose of Ativan and a refill of Vicodin. *PAGEID* 514. Dr. Bradac commented that, because plaintiff was on the highest dose of Paxil, she should not experience anxiety; if she did, she should consult a specialist. *Id*. Plaintiff saw Dr. Bradac on June 27, 2011, "for a refill on her medication." *PAGEID* 515. Dr. Bradac noted that plaintiff's extremities had "no clubbing, cyanosis, right lateral knee with edema." *Id*. Thee was no edema in her extremities on April 28, 2011, May 26, 2011, July 28, 2011, September 1, 2011, October 27, 2011, May 2, 2012, May 11, 2012, June 4, 2012, July 13, 2012, October 12, 2012, November 16, 2012, or November 30, 2012. *PAGEID* 513-14, 517-19, 570-72, 574, 584-86, 588.

9

Dr. Bradac commented on September 1, 2011, that plaintiff would be referred to pain management if she continued to experience pain. *PAGEID* 518.  On October 27, 2011, Dr. Bradac recommended that they "needed to try to get her off the Vicodin" and Ativan.  *PAGEID* 519. Plaintiff continued to treat with Dr. Bradac for medication management through November 2012.  *PAGEID* 570-74, 584-86, 588.

On July 28, 2011, Dr. Bradac noted that plaintiff walked with a cane and "continue[d] to have right leg pain and edema with ambulation." He opined that, "for this reason, [plaintiff] is disabled."  *PAGEID* 521.

Plaintiff saw Samy F. Sakla, M.D., at Ohio Valley Pain Management Clinic on December 1, 2011.  *PAGEID* 522.  Plaintiff reported constant pain that was "achy, dull and shar [sic] at times."  *PAGEID* 522. Physical therapy had helped, but plaintiff denied that she saw any relief with Vicodin.  *Id*.  On examination, plaintiff's lower extremities were normal, she had normal range of motion in her hips, and she had no muscle wasting or atrophy.  *PAGEID* 524.  Plaintiff's gait was antalgic with the use of a cane.  *Id*.  Plaintiff reported a pain severity of four on December 8, 2011.  *PAGEID* 527.

Dr. Bradac completed a multiple impairment questionnaire on March 11, 2012.  *PAGEID* 530-37.  According to Dr. Bradac, plaintiff could sit and stand/walk for zero to one hour in an eight-hour workday. *PAGEID* 532.  Plaintiff could sit for 15 minutes at a time and would be unable to sit again for 20 minutes.  *PAGEID* 532-33.  Plaintiff could lift or carry up to 10 pounds occasionally.  *PAGEID* 533.  Dr. Bradac

10

commented that plaintiff is in constant pain, "becomes irritated, tearful, anxious [and] irritated when she is in pain," and would be incapable of tolerating even low work stress. *PAGIED* 535. Plaintiff would need to take breaks every 15 minutes and would have to rest for 45 minutes before returning to work. *Id*. Moreover, plaintiff would have psychological limitations, would need to avoid wetness, humidity, and heights, and could perform no pushing, pulling, kneeling, bending, or stooping. *PAGEID* 536.

Dr. Bradac reaffirmed these limitations in a letter dated November 8, 2012. *PAGIED* 579-80.

## III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of status post open reduction internal fixation right tibial fracture and acetabular fracture; history of fracture of pelvis and left hip with surgery; osteoarthritis; obesity; mood disorder due to medical condition; and anxiety/depression. *PAGEID* 40-41. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: Claimant can never kneel or crawl or climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, balance, stoop, and crouch. Claimant can perform occasional pushing/pulling with the right lower extremity. She should be afforded the opportunity to stand and/or walk for 10 to 15 minutes or sit for 30 minutes without being off task. Her work should accommodate the use of a cane or other assistive device for ambulation or balance. She must avoid concentrated exposure to extreme cold, extreme heat, wetness or humidity, excessive vibration, and irritants

> such as fumes, odors, dust and gases. She must avoid
> moderate exposure to hazards such as dangerous moving
> machinery and unprotected heights. Claimant's work should
> be limited to simple, routine, and repetitive tasks in a
> low stress environment, defined as having only occasional
> decision-making required, occasional changes in the work
> setting, and no strict production quotas. Lastly, claimant
> should be allowed to elevate her right foot on a footstool
> at various times throughout the workday.

*PAGEID* 41-42. Although this RFC precludes the performance of

plaintiff's past relevant work as a nurse's aide, grocery worker, case

aide, check cashing cashier, food sales clerk, and stock clerk, the

administrative law judge relied on the testimony of the vocational

expert to find that plaintiff is nevertheless able to perform a

significant number of jobs in the national economy, including such

representative jobs as order clerk, addresser, and surveillance

systems monitor. *PAGEID* 48-49. Accordingly, the administrative law

judge concluded that plaintiff was not disabled within the meaning of

the Social Security Act from February 25, 2010, through the date of

the administrative decision. *PAGEID* 50.

## IV. Discussion

Pursuant to 42 U.S.C. § 405(g), judicial review of the

Commissioner's decision is limited to determining whether the findings

of the administrative law judge are supported by substantial evidence

and employed the proper legal standards. *Richardson v. Perales*, 402

U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595

(6th Cir. 2005). Substantial evidence is more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.

*See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues that the administrative law judge erred in evaluating the medical opinions of record.  Plaintiff argues, first, that the administrative law judge erred in failing to grant controlling weight to Dr. Bradac's opinions, in failing to address the relevant factors in evaluating Dr. Bradac's opinions, and "by rejecting the limitations described by treating physician Bradac as on the issue of disability reserved to the Commissioner."  *Statement of Errors*, *PAGEID* 602-08.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case

record."  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Plaintiff treated with Dr. Bradac from May 11, 2001, through at least November 30, 2012.  *PAGEID* 439, 530, 574, 581-91.  On July 28,

2011, Dr. Bradac noted that plaintiff walked with a cane and
"continue[d] to have right leg pain and edema with ambulation," and
opined that, "for this reason, [plaintiff] is disabled." *PAGEID* 521.
Dr. Bradac also completed a multiple impairment questionnaire on March
11, 2012, *PAGEID* 530-37, in which he opined that plaintiff could sit
and stand/walk for zero to one hour in an eight-hour workday, *PAGEID*
532, could sit for 15 minutes at a time and would be unable to sit
again for 20 minutes, *PAGEID* 532-33.  Plaintiff could lift or carry up
to 10 pounds occasionally.  *PAGEID* 533.  Dr. Bradac commented that
plaintiff is in constant pain, "becomes irritated, tearful, anxious
[and] irritated when she is in pain," and opined that plaintiff would
be incapable of tolerating even low work stress.  *PAGIED* 535.
According to Dr. Bradac, plaintiff would need to take breaks every 15
minutes and would need to rest for 45 minutes before returning to
work.  *Id*.  Plaintiff would also have psychological limitations, would
need to avoid wetness, humidity, and heights, and could not engage in
pushing, pulling, kneeling, bending, or stooping.  *PAGEID* 536.  Dr.
Bradac reaffirmed these limitations in a letter dated November 8,
2012.  *PAGIED* 579-80.

The administrative law judge characterized Dr. Bradac as a
treating source and evaluated his treatment notes and opinions as
follows:

> More specifically as to treatment from Dr. Bradac, records
> indicated claimant visited with or made request of Dr.
> Bradac on fourteen occasions between September 2010 and
> August 2012. Other than a singular observation of right
> lateral knee edema reported on June 27, 2011, objective
> findings indicated no abnormalities, including no edema and

15

intact neurological functioning. In fact, claimant's right knee edema was not present one month later, with a July 28, 2011 examination finding no edema. Dr. Bradac's benign treatment records render his July 28, 2011 statement that claimant was "disabled" because of pain and edema with ambulation unpersuasive.

The undersigned further notes that Dr. Bradac's assertion that claimant was "disabled" was not a medical opinion, but an administrative finding dispositive of a case, requiring familiarity with the SSA regulations and legal standards set forth therein, and therefore reserved to the SSA Commissioner. Dr. Bradac's statement was carefully considered to determine the extent to which it was supported by the record as a whole and/or contradicted by persuasive evidence, but was not accorded controlling weight (20 CFR 404.1527(d)(2), 416.927(d)(2), and Social Security Ruling 96-5p).

A pain management consultation was noted in October 2011 treatment records. In conjunction with this referral was Dr. Bradac's intention to get claimant off of Vicodin and Ativan. The treatment records which followed showed no indication that claimant was being weaned off of, or had stopped the use of, Vicodin and/or Ativan. In fact, records indicated continued scripts for Vicodin and Ativan being filled as prescribed by Dr. Bradac; further tending to undermine the persuasiveness of his statements.

.    .    .

Dr. Bradac provided additional statements regarding claimant's alleged impairments in relation to her ability to perform work-like activities. The statements mirrored one another and asserted that claimant was limited to less than sedentary exertional level work and could not complete an 8-hour workday. It was also asserted that claimant would need unscheduled breaks and was "unable to work at this time." Once again, Dr. Bradac made statements equivalent to administrative findings dispositive of a case and not medical opinions. His statements were carefully considered to determine the extent to which they were supported by the record as a whole and/or contradicted by persuasive evidence, but were not accorded controlling weight (20 CFR 404.1527(d)(2), 416.927(d)(2), and Social Security Rule 96-5p). Although a treating and examining source, treatment records were unremarkable for any significant objective findings. As such, the undersigned find it reasonable to conclude that Dr. Bradac's statements were based primarily, if not entirely, upon the claimant's self-reported

subjective complaints, subjective complaints claimant also reported during State agency consultative examination, yet were again objectively unsupported.

.   .   .

As for the weight given to the opinion evidence throughout the record, the undersigned accorded some weight to each opinion. . . . As noted above, the undersigned also considered the treating source statements of Dr. Bradac; however, such statements were not entitled to controlling weight as to the issue of "disability" and furthermore, were inconsistent with internal treatment records and appeared to rely heavily upon claimant's subjective reports, thus rendering them less persuasive.

*PAGEID* 45-47 (citations to record omitted).

The administrative law judge did not violate the treating physician rule in evaluating Dr. Bradac's opinion.  The administrative law judge discounted Dr. Bradac's opinions of disability and extreme limitations because they were "inconsistent with" his "benign" treatment records, which were "unremarkable for any significant objective findings."  *Id*.  The administrative law judge also discounted Dr. Bradac's opinions because they "appeared to rely heavily upon claimant's subjective reports."  *Id*.  These findings are supported by substantial evidence.  Notably, Dr. Bradac's treatment notes contain relatively few objective findings to support such extreme limitations of functioning.  Plaintiff argues that Dr. Bradac noted right knee edema on June 27, 2011, *Statement of Errors*, *PAGEID* 605; *see also PAGEID* 515, but there was no edema on April 28, 2011, May 26, 2011, July 28, 2011, September 1, 2011, October 27, 2011, May 2, 2012, May 11, 2012, June 4, 2012, July 13, 2012, October 12, 2012, November 16, 2012, or November 30, 2012.  *PAGEID* 513-14, 517-19, 570-

17

72, 574, 584-86, 588.  Plaintiff also notes that her right knee was stiff during  a March 10, 2010 appointment with Dr. Tarkin, *Statement of Errors*, *PAGEID* 605; *see also PAGEID* 551, but that examination was conducted shortly after her surgeries and subsequent examinations revealed improved range of motion.  *PAGEID* 549, 544.  Plaintiff further argues that x-rays of her knee show "significant posttraumatic changes about her knee," *Statement of Errors*, *PAGEID* 605, but her x-rays also revealed "an old well-healed fracture of the proximal right tibia with adequate alignment of the fracture fragments" and no abnormalities with the hardware or screws.  *PAGEID* 420.  It is also apparent, as the administrative law judge found, that Dr. Bradac's opinions are based, at least in part, on plaintiff's own reported complaints.

Plaintiff also argues that the administrative law judge erred "by rejecting the limitations described by treating physician Bradac as on the issue of disability reserved to the Commissioner." *Statement of Errors*, *PAGEID* 606.  In this regard, plaintiff characterizes, without citing any particular portion of Dr. Bradac's opinions, Dr. Bradac's opinions as "medical opinions" entitled to "significant weight." *Id*.  The administrative law judge evaluated Dr. Bradac's opinions and assigned them "some weight," but found that Dr. Bradac's opinions that plaintiff was "disabled" and "unable to work at this time" were equivalent to administrative findings dispositive of a case and not medical opinions.  *PAGEID* 45-46.  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources

18

that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404. 1527(a)(2), 416.927(a)(2).  An opinion that a claimant is disabled or unable to work "is tantamount to a disability opinion, a matter reserved to the Commissioner for determination." *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011).  *See also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112 (6th Cir. 2010) ("The applicable regulations provide that a statement by a medical source that the claimant is 'unable to work' is not a 'medical opinion[;] rather, it is an opinion on an 'issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case, *i.e.*, that would direct the determination or decision of disability.'") (quoting 20 C.F.R. § 404.1527(e)(1)). Accordingly, Dr. Bradac's opinions that plaintiff is "disabled" and "unable to work at this time" are, "as a matter of law, 'not given[n] any special significance.'"  *See Payne*, 402 F. App'x at 112. Moreover, the administrative law judge evaluated the remainder of Dr. Bradac's opinions and provided good reasons for discounting those opinions.  *See PAGEID* 45-46.

        In short, the administrative law judge's analysis and evaluation are supported by substantial evidence and are sufficiently specific as to the weight given to Dr. Bradac's opinions and the reasons for assigning that weight.  Plaintiff's arguments to the contrary

notwithstanding, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Plaintiff next argues that the administrative law judge erred in finding that Dr. Musunuri's opinions were based primarily on plaintiff's subjective complaints. *Statement of Errors*, *PAGEID* 605. Plaintiff was examined by Dr. Musunuri on November 10, 2010. *PAGEID* 410-19. Plaintiff reported constant, radiating, and sharp pain in her right leg and left hip. *PAGEID* 411-12. Upon examination, Dr. Musunuri noted mild swelling of the right knee joint, but no restriction in range of motion, no muscular atrophy, and pedal pulses of 2+ bilaterally. *PAGEID* 413. Plaintiff had mild to moderate restriction in the range of motion in abduction and external rotation of the left hip joint. *PAGEID* 414. Dr. Musunuri opined that plaintiff's "impairment in work-related physical activities is moderate to severe." *PAGEID* 415. Dr. Musunuri examined plaintiff again on July 6, 2011. *PAGEID* 501-10. Plaintiff's subjective complaints and Dr. Musunuri's evaluation of plaintiff were nearly identical to the November 10, 2011 assessment. *Id*. Dr. Musunuri again opined that plaintiff's "impairment in work related physical activities is moderate to severe." *PAGEID* 506.

As a consultative examiner, Dr. Musunuri is properly classified
as a nontreating source.  *See* 20 C.F.R. §§ 404.1502, 416.902
("Nontreating source means a physician, psychologist, or other
acceptable medical source who has examined [the claimant] but does not
have, or did not have, an ongoing treatment relationship with [the
claimant].").  With regard to nontreating sources, the agency will
simply "give more weight to the opinion of a source who has examined
[the claimant] than to the opinion of a source who has not examined"
the claimant.  *Id.* In determining the weight to be given the opinion
of a nontreating source, an administrative law judge should consider
such factors as "the evidence that the physician offered in support of
h[is] opinion, how consistent the opinion is with the record as a
whole, and whether the physician was practicing in h[is] specialty."
*Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010)(citing
20 C.F.R. § 404.1527(d)).

The administrative law judge evaluated Dr. Musunuri's opinions
and accorded them "some weight."  *PAGEID* 46-47.  With regard to
plaintiff's physical impairments, the administrative law judge found
that "the assessments were rendered less persuasive as they appeared
to rely primarily upon the claimant's subjective statements, as
objective findings were predominantly benign (Exs. 6F and 14F)."
*PAGEID* 47.  This finding is supported by substantial evidence.
Notably, Dr. Musunuri's evaluations contain relatively few objective
findings, and his "medical source statement[s]" extensively cite
plaintiff's subjective complaints before concluding that plaintiff's

"impairment in work-related physical activities is moderate to severe." *PAGEID* 414-15, 505-06. Moreover, the Court notes that it is not improper for an administrative law judge to consider whether a medical opinion is dependent on the claimant's reports of symptoms and limitations, especially where, as here, the administrative law judge also finds that the claimant's subjective symptoms and reported limitations are not entirely credible. *See PAGEID* 47-48.

Plaintiff also argues that the administrative law judge "erred by relying primarily on the opinions from the non-examining state agency medical consultants." *Statement of Errors*, *PAGEID* 603-605. Plaintiff argues that it was error to rely on the opinion of medical consultant "W. Backlund" because the record does not reflect that the consultant is a physician. *Id*. Plaintiff also argues that the administrative law judge erred in relying on the opinions of the medical consultants because they reviewed "a markedly undeveloped record and [gave] opinions inconsistent with all the other evidence of record." *Id*. at *PAGEID* 605. Plaintiff's arguments are not well taken.

Social Security Ruling 96-6p provides, in part:

1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.

2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

SSR 96-6p, 1996 WL 374180 (July 2, 1996). The Ruling does not require an administrative law judge to reject a state agency medical opinion

22

when the claimant continues treatment after the opinion was formed or when additional medical records are generated after the opinion is rendered.  "[T]he regulations provide only that an [administrative law judge] should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11-cv-828, 2013 WL 121813, at *7 (S.D. Ohio Jan. 9, 2013) (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)).  It is true that remand may be appropriate where the administrative law judge relied on an opinion made without the benefit of substantial evidence generated after the date of the opinion.  *See e.g.*, *Ford v. Astrue*, No. 2:11-cv-1139, 2013 WL 372464, at *6 (S.D. Ohio Jan. 30, 2013) *report and recommendation adopted sub nom. Ford v. Colvin*, 2:11-cv-1139, 2013 WL 765654 (S.D. Ohio Feb. 28, 2013)).  However, this is not such a case.  Notably, plaintiff has not cited any evidence in support of her argument. Moreover, the administrative law judge had the opportunity to review the entire record, the RFC is more restrictive than the opinions of the medical consultants would suggest and, although the administrative law judge relied on the opinions of state agency medical consultants, she somewhat discounted those opinions because the medical consultants "did not have an opportunity to review claimant's updated treatment records or consider hearing testimony." *PAGEID* 47.

The Court also finds that it was not reversible error to rely on the opinion of medical consultant "W. Backlund."  Medical consultant "W. Backlund" reviewed the record and completed a physical residual functional capacity assessment on January 11, 2011. *PAGEID*

424-31.  The medical consultant opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk at least two hours in an eight-hour workday, and could sit for about six hours in an eight-hour workday.  *PAGEID* 425. Plaintiff could frequently balance and could occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds.  *PAGEID* 426.  This medical consultant further opined that plaintiff would need to avoid concentrated exposure to vibration and hazards such as machinery and heights.  *PAGEID* 428.  Elizabeth Das, M.D., thereafter reviewed the record and, on July 19, 2011, affirmed the medical consultant's January 11, 2011 RFC assessment.  *PAGEID* 511. Although, as plaintiff argues, "W. Backlund" did not list his credentials when signing the physical residual functional capacity assessment form, he did indicate his role as a medical consultant and his medical consultant code.  *See PAGEID* 431.  In any event, the opinion of "W. Backlund" was affirmed by Dr. Das, who is clearly identified in the record.

Plaintiff also challenges the administrative law judge's credibility determination.  *Statement of Errors*, *PAGEID* 608-10. Plaintiff specifically argues that the administrative law judge improperly credited plaintiff's "modest improvement following multiple surgeries" as evidence that she can perform substantial work; plaintiff also complains that the administrative law judge improperly concluded "that diagnostic testing after Ms. Anderson's surgeries did not document any abnormalities."  *Id.* at *PAGEID* 609.  Plaintiff argues

that the administrative law judge placed undue weight on plaintiff's activities of daily living. *Id*. at *PAGEID* 610.  She further argues that it was improper to note plaintiff's "conservative" treatment without inquiring at the administrative hearing why plaintiff had not undergone any additional surgical procedures.  *Id*. at *PAGEID* 609.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).  *See also* 42 U.S.C. § 423(d)(5)(A).  In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition.  *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).  If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint.  *Id.; Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)).  However, credibility determinations must be clearly explained.  *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).  If

the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge summarized plaintiff's subjective complaints and her testimony at the administrative hearing, but found that those subjective complaints and that testimony were "not entirely credible." *PAGEID* 43-44.  The administrative law judge evaluated the medical evidence, articulated the proper standard for evaluating a claimant's credibility, and concluded her evaluation of plaintiff's credibility assessment as follows:

> The evidence of record as thoroughly discussed above indicated continued improvement following claimant's initial injuries due to a motor vehicle accident.  Surgical treatment records were unremarkable for any significant ongoing physical issues, with diagnostic testing indicating well healed fractures and proper alignment and maintenance of joint space.  No specialized mental health treatment was evidenced in the record and treatment records from claimant's primary care provider who provided psychotropic medications were insignificant for objective mental health findings; in fact, claimant's primary care provider indicated claimant should not have anxiety, and if she did, should seek out specialized mental health treatment.
>
> The evidence of record also failed to provide objective support for the claimant's allegations of back pain; allegations not evidenced as reported to her primary care providers.  Although claimant reported limitations in her functional abilities, she also reported participation in a number of activities, such as shopping, housework, watching television a lot, reading a lot, sitting on the porch, and driving; activities not inconsistent with performance of sedentary work-like activities.

> Overall, the combination of unremarkable objective
> findings, continuation of conservative treatment measures,
> minimal mental health treatment with no specialized mental
> health treatment, claimant's participation in numerous
> activities of daily living, and other facts discussed
> above, are inconsistent with the claimant's reports of
> totally disabling symptoms and tend to diminish her overall
> credibility

*PAGEID* 47-48.  The administrative law judge noted and followed the

appropriate standards, performed an appropriate evaluation of the

evidence, and clearly articulated the bases of her credibility

determination.  It was not improper for the administrative law judge

to evaluate the objective medical evidence or plaintiff's activities

of daily living in evaluating plaintiff's credibility.  *See* SSR 96-7,

1996 WL 374186 (July 2, 1996).  Plaintiff disagrees with the

administrative law judge's finding that plaintiff continued to improve

following her initial injuries suffered in the motor vehicle accident,

but that finding is supported by substantial evidence.  Moreover,

plaintiff's arguments to the contrary notwithstanding, *Statement of*

*Errors*, *PAGEID* 609, the administrative law judge did not conclude

"that diagnostic testing after Ms. Anderson's surgeries did not

document any abnormalities."  Instead, the administrative law judge

noted that "diagnostic testing indicat[ed] well healed fractures and

proper alignment and maintenance of joint space."  *PAGEID* 47.  This

conclusion is supported by substantial evidence: x-rays revealed "an

old well-healed fracture of the proximal right tibia with adequate

alignment of the fracture fragments" and no abnormalities with the

hardware or screws.  *PAGEID* 420.  The analysis and credibility

determination of the administrative law judge enjoy substantial

27

support in the record.  This Court will not – and indeed may not – revisit that credibility determination.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district

court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

March 4, 2015                          _____*s/Norah McCann King*_____
                                        Norah M<sup>c</sup>Cann King
                                   United States Magistrate Judge