IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Katherine L. Anderson,

    Plaintiff,

  v.                              Case No. 2:14-cv-1222

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

    Defendant.

ORDER

    Plaintiff Katherine L. Anderson brings this action under 42 U.S.C. §§ 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability insurance benefits, and for supplemental security income. This matter is before the court for consideration of plaintiff's March 18, 2015, objections to the March 4, 2015, report and recommendation of the magistrate judge, recommending that the decision of the Commissioner be affirmed. The Commissioner has filed a response to plaintiff's objections.

I. Standard of Review

    If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II. Plaintiff's Objections

A. Administrative Record

Plaintiff filed her applications for a period of disability and disability insurance benefits and for supplemental security income on February 25, 2010, after she was injured in an automobile accident on or about February 8, 2010. A hearing was held before an administrative law judge ("ALJ") on October 29, 2010. Plaintiff, represented by counsel, and Mary Beth Kopar, a vocational expert, appeared and testified at the hearing. PAGEID 38. In a written decision dated January 25, 2013, the ALJ found that plaintiff had the following severe impairments: "status post open reduction internal fixation right tibial fracture and acetabular fracture; history of fracture of pelvis and left hip with surgery; osteoarthritis; obesity; mood disorder due to medical

2

condition; and anxiety/depression[.]" PAGEID 40-41. However, the magistrate judge noted that plaintiff's *Statement of Errors* only challenged the ALJ's evaluation of her physical impairments. Doc. 13, p. 4, n. 1.

After consideration of the entire record, the ALJ formulated plaintiff's residual functional capacity ("RFC"), finding that

> since February 8, 2010, claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: Claimant can never kneel or crawl or climb ladders, ropes or scaffolds. She can occasionally climb ramps or stairs, balance, stoop, and crouch. Claimant can perform occasional pushing/pulling with the right lower extremity. She should be afforded the opportunity to stand and/or walk for 10 to 15 minutes or sit for 30 minutes without being off task. Her work should accommodate the use of a cane or other assistive device for ambulation or balance. She must avoid concentrated exposure to extreme cold, extreme heat, wetness or humidity, excessive vibration, and irritants such as fumes, odors, dust and gases. She must avoid moderate exposure to hazards such as dangerous moving machinery and unprotected heights. Claimant's work should be limited to simple, routine, and repetitive tasks in a low stress environment, defined as having only occasional decision-making required, occasional changes in the work setting, and no strict production quotas. Lastly, claimant should be allowed to elevate her right foot on a footstool at various times throughout the workday.

PAGEID 42.

In arriving at plaintiff's RFC, the ALJ reviewed the hospital records concerning plaintiff's surgery to repair an acetabular fracture of her left hip/pelvis, and surgery to repair a tibial plateau fracture, right leg, and a medial meniscus tear in her right knee. The ALJ considered the treatment records of plaintiff's surgeon, Dr. Ivan Tarkin, who also monitored plaintiff's recovery following surgery. The ALJ also reviewed the

treatment records of Dr. Charles Bradac, Jr., plaintiff's family physician, including a multiple impairment questionnaire completed on March 11, 2012, and a letter reaffirming plaintiff's limitations dated November 8, 2012; the reports of Dr. Maheshwar R. Musunuri, M.D., a consultant who evaluated plaintiff on two occasions on behalf of the Rehabilitation Services Commission, Bureau of Disability Determination; the records of Dr. Samy F. Sakla, M.D., a pain management specialist who saw plaintiff on two occasions in December of 2011; the report of W. Backlund, a state medical consultant who reviewed plaintiff's records and completed a physical residual functional capacity assessment on January 11, 2011, which was reviewed and affirmed by Dr. Elizabeth Das, M.D., on July 19, 2011; and plaintiff's hearing testimony, which included evidence of her daily activities. The ALJ found that plaintiff was not capable of performing any past relevant work. PAGEID 48. Based on the testimony of the vocational expert, the ALJ found that there were jobs existing in significant numbers in the national economy that plaintiff could perform at the unskilled sedentary level, taking into account the additional restrictions in her RFC, and that plaintiff was not disabled. PAGEID 49-50.

B. Opinions of Dr. Bradac

Plaintiff objects to the finding of the magistrate judge that the ALJ did not err in: 1) failing to grant controlling weight to the opinions of plaintiff's treating physician, Dr. Bradac; 2) failing to address the relevant factors in evaluating Dr. Bradac's opinions; and 3) rejecting Dr. Bradac's opinions on the issue of disability.

The Commissioner has issued a policy statement, Social Security Ruling 96-2p, 1996 WL 374188 (Soc. Sec. Admin. July 2,

1996), to guide an ALJ's assessment of a treating-source opinion. Treating-source opinions must be given "controlling weight" if: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. §404.1527(c)(2); Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *2-3.

Even if the opinion of the treating doctor does not meet these "controlling weight" criteria, this does not mean that the opinion must be rejected; rather, it "may still be entitled to deference and be adopted by the adjudicator." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *1.  If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on factors such as the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence.  20 C.F.R. §404.1527(c)(2)-(6); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  An opinion which does not warrant controlling weight "still must be weighed as the regulations prescribe, with no greater scrutiny being applied to [the treating physician's] opinions than to those of the nontreating and nonexamining sources." *Gayheart*, 710 F.3d at 380.

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. §404.1527(c)(2).  These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

5

treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F.App'x 543, 551 (6th Cir. 2010). An ALJ may accomplish the goals of the "good reasons" requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 439-41 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F.App'x 462, 470-72 (6th Cir. 2006). An ALJ need not discuss every piece of evidence in the record for his decision to stand. *Karger v. Comm'r of Soc. Sec.*, 414 F.App'x 739, 753 (6th Cir. 2011); *Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006); *Thacker v. Comm'r of Soc. Sec.*, 99 F.App'x 661, 665 (6th Cir. 2004). Further, an ALJ's failure to cite specific evidence does not indicate that it was not considered. *Simons v. Barnhart*, 114 F.App'x 727, 733 (6th Cir. 2004).

The ALJ recognized that Dr. Bradac was a treating source and that he had seen plaintiff or had contact with her on fourteen occasions from September 2010 and August 2012. PAGEID 45, 47. However, the ALJ did not give his statements controlling weight, as Dr. Bradac's treatment records "were unremarkable for any significant objective findings." PAGEID 46. The ALJ observed that, with the exception of one observation of right lateral knee edema reported on June 27, 2011, Dr. Bradac's "objective findings indicated no abnormalities, including no edema and intact neurological functioning" and that plaintiff's right knee edema was

6

not present one month later during the July 28, 2011, examination. PAGEID 45. The ALJ concluded that Dr. Bradac's statements regarding plaintiff's functional limitations were inconsistent with his internal treatment records, and were less persuasive because they were based primarily, if not entirely, on plaintiff's subjective complaints, which were not objectively supported by the record. PAGEID 46, 47.

Dr. Bradac's records also indicate that plaintiff consulted with him to obtain prescriptions for Vicodin and Ativan. The ALJ commented that in October of 2011, Dr. Bradac noted that it was his intention to get plaintiff off these medications. The ALJ concluded that the fact that Dr. Bradac continued to prescribe these medications further tended to undermine the persuasiveness of his statements. PAGEID 45.

In support of the finding that Dr. Bradac's assessments of plaintiff's impairments were not supported by the objective evidence in the record, the ALJ also noted that diagnostic testing following plaintiff's surgeries "showed progressive healing of plaintiff's right knee and pelvis/left hip, with no complications and no alignment changes." PAGEID 45. The ALJ cited Dr. Tarkin's reports that plaintiff had no pain by April 2010, that plaintiff was ambulatory on her left side by May 2010, including pain-free range of motion in her hip, and that despite some knee pain, plaintiff had no mechanical symptoms or give-away in her right knee. PAGEID 45. The ALJ commented that "[d]iagnostic testing of the right knee and pelvis/left hip were unremarkable and showed maintained joint spacing and adequate alignment." PAGEID 46. The ALJ observed that the objective evidence indicated continued improvement of plaintiff's motor vehicle injuries, as the

"[s]urgical treatment records were unremarkable for any significant ongoing physical issues, with diagnostic testing indicating well healed fractures and proper alignment and maintenance of joint space."  PAGEID 47.

The objective findings of Dr. Musunuri made during his consultative examinations were also inconsistent with Dr. Bradac's opinions.  The ALJ noted that Dr. Musunuri observed no more than some mild right knee joint swelling, with normal range of motion; mild to moderate range of motion deficit in abduction and external rotation of the left hip joint; no muscle atrophy; and normal bilateral pedal pulses, deep tendon reflexes, and sensation. PAGEID 46.  The ALJ further remarked that although plaintiff complained of low back pain at the hearing, Dr. Musunuri's examinations showed no spine tenderness or range of motion deficits.  PAGEID #46.

In light of the lack of objective evidence, the ALJ properly concluded that Dr. Bradac's opinions were based primarily on plaintiff's subjective complaints.  *See Walton v. Comm'r of Soc. Sec.*, 60 F.App'x 603, 612 (6th Cir. 2003)(magistrate judge reasonably inferred that doctor's opinion was based on plaintiff's subjective complaints where opinion was unsupported by objective medical findings).  Subjective claims of disabling pain must be supported by objective medical evidence in order to serve as a basis of a finding of disability.  *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995).  Because the ALJ concluded that Dr. Bradac's opinions concerning plaintiff's physical limitations were not supported by objective evidence in the record, and that plaintiff's statements concerning the intensity, persistence and limiting

8

effects of her reported symptoms were not entirely credible, *see* PAGEID 44, the ALJ's decision not to give Dr. Bradac's opinions controlling weight is supported by substantial evidence. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273-74 (6th Cir. 2010)(concluding that the ALJ did not err in rejecting a medical opinion based on the claimant's subjective complaints which were not supported by objective medical evidence); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)(ALJ's rejection of doctors' opinions was supported by substantial evidence where doctors formed their opinions solely from claimant's reporting of her symptoms and conditions, and the ALJ found that claimant was not credible); *Crofutt v. Comm'r of Soc. Sec.*, No. 2:13-cv-706, 2015 WL 964113 at *15 (S.D.Ohio March 4, 2015)(ALJ did not err in discounting doctor's opinion based in part on plaintiff's subjective complaints of pain which were not well-supported by objective record).

    The ALJ did not err in declining to give Dr. Bradac's opinions controlling weight due to the fact that those opinions conflicted with his own treatment records. *See Dawson v. Comm'r of Soc. Sec.*, 468 F.App'x 510, 513-14 (6th Cir. 2012)(ALJ gave sufficient reasons for discounting the opinions of plaintiff's treating physicians, such as the observation that the doctor's conclusions were inconsistent with other substantial evidence, including his own progress notes). Further, this was not a case where the ALJ was "playing doctor." The ALJ did not interpret raw medical data; rather, she permissibly concluded that the functional limitations proposed by Dr. Bradac were not supported by the objective medical evidence in the record. *See Conger v. Comm'r of Soc. Sec.*, No.

2:13-cv-811, 2014 WL 4272734 at *9 (S.D.Ohio Aug. 28, 2014).

Plaintiff argues that there is objective evidence in the record which supports her claim that she has functional limitations which render her unable to work, such as the right knee edema observed by Dr. Bradac. However, as the magistrate judge noted, Doc. 13, p. 17, Dr. Bradac observed right knee edema on only one occasion out of thirteen visits. Dr. Tarkin noted on March 10, 2010, soon after plaintiff's surgeries, that plaintiff's right knee was stiff. However, the magistrate judge observed that subsequent examinations revealed improved range of motion. Doc. 13, p. 18. The magistrate judge further commented that while some x-rays showed significant posttraumatic changes in plaintiff's right knee, later x-rays revealed "'an old well-healed fracture of the proximal right tibia with adequate alignment of the fracture fragments' and no abnormalities with the hardware or screws." Doc. 13, p. 18 (citing PAGEID 420). Even considering the evidence noted by plaintiff, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006)(quotation marks and citation omitted).

The court agrees with the magistrate judge's thorough analysis of the ALJ's discussion of Dr. Bradac's opinions, *see* Doc. 13, pp. 13-18. The ALJ's opinion addressed the factors relevant to the consideration of the opinions of treating sources. The ALJ adequately explained why she was giving only some weight to Dr. Bradac's opinions. The ALJ's decision not to assign controlling weight to Dr. Bradac's opinions is supported by substantial

evidence.

As to plaintiff's arguments that the ALJ erred in failing to give controlling weight to Dr. Bradac's opinions that plaintiff was "disabled" and "unable to work," the court notes that opinions by doctors on the ultimate issue of disability are never entitled to controlling weight. *See* 20 C.F.R. §404.1527(e)(1)(the conclusion of disability is reserved to the Secretary); 20 C.F.R. §404.1527(e)(3)(no "special significance" is given to opinions of disability even if they come from a treating physician); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). An ALJ is not bound by a physician's conclusory opinion that a claimant is unable to work. *Dawson*, 468 F.App'x at 513 (citing *Bass*, 499 F.3d at 511). The ALJ did not ignore this evidence. Rather, the ALJ stated that Dr. Bradac's statements that plaintiff was "disabled" and "unable to work at this time" were "carefully considered to determine the extent to which they were supported by the record as a whole and/or contradicted by persuasive evidence, but were not accorded controlling weight[.]" PAGEID 45, 46. The court agrees with the finding of the magistrate judge, *see* Doc. 13, pp. 18-20, that there was no error in the ALJ's consideration of this evidence.

C. Opinions of Dr. Musunuri

Plaintiff further argues that the ALJ erred in giving only some weight to Dr. Musunuri's opinions and in finding that those opinions were based primarily on plaintiff's subjective complaints. As a non-treating state consultant who examined plaintiff, Dr. Musunuri is properly classified as a nontreating but examining source. 20 C.F.R. §§404.1502, 416.902. Generally, an opinion from a medical source who has examined a claimant is given more weight

than an opinion from a source who has not performed an examination. *Gayheart*, 710 F.3d at 375 (citing 20 C.F.R. §§404.1502 and 404.1527(c)(1)). Although the ALJ must provide some explanation of the weight given to state agency opinions, *see* 20 C.F.R. §404.1527(f), the procedural requirement for providing "good reasons" for the weight given to a doctor's opinion does not apply to nontreating sources. *See Ealy*, 594 F.3d at 514. Opinions from non-treating examining sources are weighed based on the examining relationship, specialization, consistency, and supportability. *Gayheart*, 710 F.3d at 376. Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. 20 C.F.R. §§404.1527(c)(6). In addition, "the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record[.]" SSR 96-6p, 1996 WL 374180 at *2 (S.S.A.).

Following his examinations of plaintiff on November 10, 2010, and July 6, 2011, Dr. Musunuri concluded that plaintiff's impairment in work-related physical activities is moderate to severe. PAGEID 415, 506. However, the ALJ noted that Dr. Musunuri's examination findings

> indicated no more than some mild right knee joint swelling and mild to moderate range of motion deficit in abduction and external rotation of the left hip joint. Claimant's range of motion of the right knee joint was normal. No muscle atrophy was evidenced. Both pedal pulses and deep tendon reflexes were normal bilaterally and claimant's sensation was normal. Claimant was moving all extremities. Muscle strength was unaffected bilaterally and no edema was present. Diagnostic testing of the right knee and pelvis/left hip were unremarkable and showed maintained joint spacing and adequate alignment. Additionally, although claimant alleged low

> back pain at [the] hearing, objective findings were unremarkable, including no spine tenderness and no range of motion deficits throughout the spine. Furthermore, claimant reported only "mild" pain while at rest[.]

PAGEID 46 (citing Exhibits 6F and 14F). The ALJ indicated that she considered Dr. Musunuri's consultative examiner's reports and accorded them "some weight." PAGEID 47. The ALJ then stated that "with regard to claimant's physical impairments, the assessments were rendered less persuasive as they appeared to rely primarily upon the claimant's subjective statements, as objective findings were predominantly benign[.]" PAGEID 47.

The magistrate judge concluded that the ALJ's decision to accord Dr. Musunuri's opinions "some weight" was supported by substantial evidence. Doc. 13, p. 21. The magistrate judge observed that Dr. Musunuri's evaluations contain "relatively few objective findings, and that he extensively cited plaintiff's subjective complaints before concluding that plaintiff's impairment in work-related physical activities is moderate to severe. Doc. 13, pp. 21-22. This court agrees with the conclusion of the magistrate judge that the ALJ reasonably discounted Dr. Musunuri's opinions by considering whether those opinions were based primarily on plaintiff's subjective complaints. *See Ferguson*, 628 F.3d at 273-74.

D. Opinions of State Agency Consultants Backlund and Das

Plaintiff further contends that it was error for the ALJ to rely on the opinions of the non-examining state agency medical consultants. Plaintiff argues that the record fails to show that "W. Backlund" is a physician. As the magistrate judge noted, Doc. 13, p. 24, although "W. Backlund" did not provide his credentials when signing the physical residual functional capacity assessment

on January 11, 2011, he indicated that his role was that of medical consultant, and provided his medical consultant code. PAGEID 431. In addition, the opinion of "W. Backlund" was affirmed by Dr. Das, whose credentials as a medical doctor are clearly identified in the record. PAGEID 511. The ALJ did not err in considering Backlund's report.

Plaintiff also argues that the ALJ erred in according any weight to the opinions of these state agency consultants because they did not have the opportunity to review evidence created after Backlund's January 11, 2011 report, including more recent treatment records from Dr. Bradac and the July 6, 2011, report of Dr. Musunuri, which was nearly identical to his November 10, 2011, assessment. As a general matter, the opinions of a treating source, who has an ongoing treatment relationship with the claimant, and of an examining source, who physically examines the claimant but has no ongoing treatment relationship with the claimant, are entitled to more weight than the opinion of a non-examining source such as state agency consultants. *Gayheart*, 710 F.3d at 375. However, this is not a *per se* rule. *See Norris v. Comm'r of Soc. Sec.*. 461 F.App'x 433, 438-40 (6th Cir. 2012)(upholding ALJ's decision to credit state-agency physicians' assessments over those of treating physicians); *see also* Soc. Sec. Rul. 96-6p, 1996 WL 374180 at *3 (Soc. Sec. Admin. July 2, 1996)("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). An ALJ can rely on a non-examining source who did not have the opportunity to review

later medical records, as long as there is some indication in the decision that the ALJ considered the new evidence before giving weight to an opinion that is not based on a review of a complete case record. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

In this case, the ALJ considered the physical residual functional capacity assessment completed by Backlund and affirmed by Dr. Das, which placed plaintiff at the light exertional level with additional exertional and nonexertional limitations. PAGEID 47. The ALJ accorded only some weight to these opinions. The ALJ found that these opinions were "most consistent with and supported by the medical evidence of record" but that these agency consultants "were nonexamining sources and did not have an opportunity to review claimant's updated treatment records or consider hearing testimony[.]" PAGEID 47. The ALJ found plaintiff's RFC based on "the totality of the medical evidence of record from treating sources, examining sources, and nonexamining sources, as well as consideration of claimant's allegations, viewed in a light most favorable to claimant." PAGEID 48. The ALJ also stated, "[A]ccording the claimant every benefit of the doubt, the undersigned, having had the sole opportunity to consider the longitudinal evidence of record and to hear claimant's sworn testimony and observe claimant's demeanor at the hearing, finds the evidence adequately supports the residual functional capacity determination accommodating the claimant's legitimate impairment-related limitations." PAGEID 48.

As required under *Blakley*, the ALJ clearly recognized and considered the fact that these consultants did not have an opportunity to consider later medical records or plaintiff's

15

hearing testimony. The magistrate judge noted that the ALJ reviewed the entire record herself and arrived at an RFC which limited plaintiff to sedentary work, a more restricted RFC than that recommended by Backlund and Das. Doc. 13, p. 23. The magistrate judge also observed that plaintiff has not cited any substantial objective evidence generated after the date of Backlund's report which would have been material to his evaluation. Doc. 13, p. 23. The ALJ did not err in considering the assessment prepared by Backlund and affirmed by Dr. Das.

E. ALJ's Determination of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in finding that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. In evaluating complaints of pain, the ALJ may properly consider the credibility of the claimant. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). An individual's statements as to "pain or other symptoms will not alone establish that [she is] disabled." *Id.* (quoting 20 C.F.R. §404.1529(a). An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ makes a determination of the credibility of the claimant based on a consideration of the entire case record. *Rogers*, 486 F.3d at 247. An ALJ may dismiss a claimant's

16

allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict. *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990). The ALJ may also consider the household and social activities of the claimant in evaluating a claimant's assertions of pain. *Walters*, 127 F.3d at 532. It is for the ALJ, not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247. An ALJ's credibility determinations are accorded great weight and deference, and the court's role is limited to evaluating whether the ALJ's explanations for partially discrediting a claimant's testimony are reasonable and supported by substantial evidence in the record. *Jones*, 336 F.3d at 476.

> The ALJ stated in her decision:
>
> In assessing the credibility of the claimant's statements regarding her symptoms and their effects on her ability to function, her medical history, the character of her symptoms, her activities of daily living, the types of treatment she received, other measures she took to relieve her symptoms, and her response to treatment were considered. The evidence of record as thoroughly discussed above indicated continued improvement following claimant's initial injuries due to a motor vehicle accident. Surgical treatment records were unremarkable for any significant ongoing physical issues, with diagnostic testing indicating well healed fractures and proper alignment and maintenance of joint space....

PAGEID 47. The ALJ also observed that the record provided no objective support for plaintiff's allegations of back pain at the hearing, and further noted that these symptoms were not reported to her primary care providers. PAGEID 44, 48. The ALJ further stated that "[a]lthough claimant reported limitations in her functional abilities, she also reported participation in a number of

activities, such as shopping, housework, watching television a lot, reading a lot, sitting on the porch, and driving; activities not inconsistent with performance of sedentary work-like activities."

PAGEID 48. The ALJ concluded:

> Overall, the combination of unremarkable objective findings, continuation of conservative treatment measures, minimal mental health treatment with no specialized mental health treatment, claimant's participation in numerous activities of daily living, and other factors discussed above, are inconsistent with the claimant's reports of totally disabling symptoms and tend to diminish her overall credibility.

PAGEID 48.

The magistrate judge concluded that the ALJ appropriately evaluated plaintiff's credibility. Doc. 13, p. 27. This court agrees with the findings of the magistrate judge in that regard. As noted above, the ALJ could consider plaintiff's daily activities in weighing the credibility of her complaints of pain. *Walters*, 127 F.3d at 532. As the magistrate judge concluded, the ALJ's findings that plaintiff continued to improve following her injuries suffered in a motor vehicle accident are supported by substantial evidence. Doc. 13, p. 27. The magistrate judge also noted that the ALJ never stated, as plaintiff alleged, that the diagnostic testing after plaintiff's surgeries did not document any abnormalities; rather, the ALJ stated "that 'diagnostic testing indicat[ed] well healed fractures and proper alignment and maintenance of joint space.'" Doc. 13, p. 27 (citing PAGEID 47). As the magistrate judge stated, "this conclusion is supported by substantial evidence: x-rays revealed 'an old well-healed fracture of the proximal right tibia with adequate alignment of the fracture fragments' and no abnormalities with the hardware or screws." Doc.

18

13, p. 27 (citing PAGEID 420).

The ALJ was also entitled to note the fact that plaintiff's treatment was conservative as weighing against her credibility. An ALJ can consider a claimant's conservative course of treatment in determining what weight to give a medical opinion, *see Gault v. Comm'r of Soc. Sec. Admin.*, 535 F.App'x 495, 496 (6th Cir. 2013); *LeFevers v. Comm'r of Soc. Sec.*, 476 F.App'x 608, 610 (6th Cir. 2012); and in formulating a claimant's RFC, *see Rudd v. Comm'r of Soc. Sec.*, 531 F.App'x 719, 727 (6th Cir. 2013). Plaintiff argues that it was error for the ALJ to rely on plaintiff's conservative treatment in her credibility assessment without asking plaintiff about the reasons for that conservative treatment at the hearing. However, an individual claiming disability "bears the ultimate burden of establishing the existence of a disability." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). It was plaintiff's burden to prove the severity of her impairments. *See Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). The ALJ had no special duty to develop the record because plaintiff was represented by counsel at the hearing. *Culp v. Comm'r of Soc. Sec.*, 529 F.App'x 750, 751 (6th Cir. 2013); *Norman v. Comm'r of Soc. Sec.*, 37 F.App'x 765 (6th Cir. 2002). Plaintiff's counsel was afforded the opportunity to question plaintiff during the hearing. *See* PAGEID 87-91. If counsel felt that the record was lacking in regard to information concerning the reasons for plaintiff's treatment history, he had the opportunity to elicit that information. The ALJ was not required to assume the role of counsel and aid plaintiff in developing the record, *see Smith v. Comm'r of Soc. Sec.*,. 572 F.App'x 363, 367-68 (6th Cir. 2014), and plaintiff was

not denied a fair hearing.

This court agrees with the finding of the magistrate judge that the "analysis and credibility determination of the administrative law judge enjoy substantial support in the record." Doc. 13, pp. 27-28.  The ALJ did not err in weighing plaintiff's credibility.

III. Conclusion

For the reasons stated above, the court concludes that the Commissioner's non-disability finding is supported by substantial evidence.  The court overrules the plaintiff's objections (Doc. 14), and adopts and affirms the magistrate judge's report and recommendation (Doc. 13).  The decision of the Commissioner is affirmed, and this action is dismissed.  The clerk is directed to enter final judgment in this case.

It is so ordered.

Date: April 23, 2015              s/James L. Graham
                                  James L. Graham
                                  United States District Judge

20